UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SULAIMAN ISMAIL, | ) | CIVIL ACTION NO. 3:22-CV-0932 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| DETECTIVE R. MILLER, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Sulaiman Ismail ("Plaintiff") alleges his Fourth Amendment rights were violated by Defendant R. Miller during a search of his home and through the resulting seizure of his property. (Doc. 7). Since filing his amended complaint here in federal court, Plaintiff entered into a Forfeiture Settlement Agreement in state court where he agreed his property was "properly seized pursuant to a valid search warrant." (Doc. 20-2, p. 3; Doc. 21-4, p. 2). Currently pending before the Court is Defendant's Motion to Dismiss or in the Alternative for Summary Judgment. (Doc. 19). For the reasons explained in this opinion, Defendant's Motion for Summary Judgment (Doc. 19) will be granted.

## II.   LEGAL STANDARDS

### A.    FEDERAL RULE OF CIVIL PROCEDURE 12B(6): MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to seek dismissal for failure to state a claim upon which relief can be granted. "The

defendant bears the burden of showing that no claim has been presented."[1] To assess the sufficiency of a complaint when dismissal is sought under Rule 12(b)(6), a court should: (1) take note of the elements a plaintiff must plead to state a claim; (2) identify mere conclusions which are not entitled to the assumption of truth; and (3) determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of a legal claim.[2]

In order for his or her allegations to be taken as true, a plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[3] To state a claim, a plaintiff must plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]."[4] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[5] Thus, courts "need not credit a claimant's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."[6] The court also need not assume that a plaintiff can prove facts that he or she has not alleged.[7] "To prevent dismissal,

---

[1] *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005).

[2] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[4] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556 (internal quotation marks omitted)).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Morse v. Lower Marion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1429-30).

[7] *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible."[8]

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.[10] This "presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'"[11] The plausibility determination is context-specific and does not impose a heightened pleading requirement.[12]

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal

---

[8] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 1949).

[9] *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

[10] *Jordan v. Fox Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

[11] *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted) (alternations in original).

[12] *Id.* at 347.

pleadings drafted by lawyers.'"[13] Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim."[14]

In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.[15]

### B. FEDERAL RULE OF CIVIL PROCEDURE 56: MOTIONS FOR SUMMARY JUDGMENT

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[17] A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.[18] For a dispute to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown

---

[13] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[14] *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

[15] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

[16] Fed. R. Civ. P. 56(a).

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[18] *Haybarger v. Laurence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 412 (3d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

to require a jury or judge to resolve the parties' differing versions of the truth at trial."[19]

A party moving for summary judgment bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact."[20] "If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways."[21] First, the party moving for summary judgment "may submit affirmative evidence that negates an essential element of the nonmoving party's claim."[22] Second, the party moving for summary judgment "may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[23]

Once the party moving for summary judgment has met its burden, "the non-moving party must rebut the motion with facts in the record and cannot rest solely

---

[19] *Id.* (quoting *Anderson,* 477 U.S. at 248-49).

[20] *Celotex Corp.*, 477 U.S. at 323.

[21] *Id.* at 331 (Brennan, J., dissenting); *see also Finley v. Pennsylvania Dep't. of Corrections*, 2015 WL 1967262, at *9 n.1 (M.D. Pa. Apr. 30, 2015) (observing that the Third Circuit has found that Justice Brennan's dissent in *Celotex* "does not differ with the opinion of the Court regarding the appropriate standards for summary judgment.") (citing *In re Bressman*, 327 F.3d 229, 337 n.3 (3d Cir. 2003) and *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 84 n.2 (3d Cir. 1987)).

[22] *Celotex Corp.*, 477 U.S. at 331.

[23] *Id.*

on assertions made in the pleadings, legal memoranda, or oral argument."[24] To show

that there is a genuine dispute of material fact, the non-moving party must cite to

"particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits, declarations, stipulations (including

those made for the purposes of the motion only), admissions, interrogatory answers,

or other materials."[25]

> In response to a summary judgment motion, a litigant cannot rely on suspicions, simple assertions, or conclusory allegations. *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981). Nor can a summary judgment motion be defeated by speculation and conjecture, *see Wharton v. Danberg*, 854 F.3d 234, 244 (3d Cir. 2017), or conclusory, self-serving affidavits. *See Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012).[26]

If the non-moving party "fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will

bear the burden at trial[,]" summary judgment is appropriate.[27] Summary judgment

is also appropriate if the non-moving party provides merely colorable, conclusory,

or speculative evidence.[28]

Finally, when ruling on a motion for summary judgment, it is not the province

of the court to weigh evidence or assess credibility. It must view the evidence

---

[24] *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); *Celotex*, 477 U.S. at 324.
[25] Fed. R. Civ. P. 56(c)(1)(A).
[26] *Parker v. Sch. Dist. of Philadelphia*, 823 F. App'x 68, 72 (3d Cir. 2020).
[27] *Celotex*, 477 U.S. at 322.
[28] *Anderson*, 477 U.S. at 249.

presented and draw all inferences in the light most favorable to the non-moving party.[29] The court may not decide whether the evidence unquestionably favors one side or the other or make credibility determinations.[30] Instead, it must decide whether a fair-minded jury could return a verdict for the non-movant on the evidence presented.[31] The Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.[32]

In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[33]

---

[29]*Lawrence v. City of Phila., Pa.*, 527 F.3d 299, 310 (3d Cir. 2008) (citing *Davis v. Mountaire Farms Inc.*, 453 F.3d 554, 556 (3d Cir. 2006)).

[30] *Anderson*, 477 U.S. at 252.

[31] *Id.*

[32] *Big Apple BMW v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

[33] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587.

### C.    CLAIMS UNDER 42 U.S.C. § 1983

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."[34] "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'"[35] To establish a claim under § 1983, Plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law.[36] In *pro se* cases, the first element of this type of claim is often shown through allegations that a constitutional right was violated.

### D.    ELEMENTS OF A FOURTH AMENDMENT UNREASONABLE SEARCH AND SEIZURE CLAIM BROUGHT UNDER 42 U.S.C. § 1983

In addition to requiring the deprivation of a federally protected right by a state actor,[37] a Fourth Amendment § 1983 unreasonable search and seizure claim requires a plaintiff to allege facts that show the "defendants' actions (1) constituted a "search"

---

[34] *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).
[35] *Williams v. Pennsylvania Hum. Rels. Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 104 (3d Cir. 2014)).
[36] *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).
[37] *Id.*

or "seizure" within the meaning of the Fourth Amendment, and (2) were "unreasonable" considering the surrounding circumstances."[38]

## III.   BACKGROUND AND PROCEDURAL HISTORY

Before turning to Defendant's arguments we will discuss the relevant procedural history in this case, the allegations in Plaintiff's amended complaint and the state court forfeiture proceedings.

This case began when Plaintiff lodged a complaint on June 13, 2022. (Doc. 1). Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 2) was granted. In keeping with 28 U.S.C. § 1915(e)(2), the Court screened Plaintiff's complaint, (Doc. 1), and found it failed to state a claim. (Doc. 6). Plaintiff was granted leave to amend his complaint. *Id*. Plaintiff timely filed an amended complaint on October 21, 2022. (Doc. 7).

### A.   RELEVANT PROCEDURAL HISTORY

Plaintiff's amended complaint added three new claims and named none of the original Defendants, instead naming: the Kingston Police Department, the Wilkes-Barre Police Department and Detective R. Miller of the Kingston Police Department ("Defendant"). (Doc. 7).

On February 6, 2023, the Court screened Plaintiff's amended complaint. (Doc. 9). The Court recommended that Plaintiff's amended complaint be dismissed, except

---

[38] *Open Inns. Ltd. v. Chester Cnty. Sheriff's Dep't.*, 24 F. Supp. 2d 410, 424 (E.D. Pa. 1998).

for his Fourth Amendment § 1983 unreasonable search and seizure claim against Defendant Miller ("Defendant") in his individual capacity only. *Id*. On March 1, 2023, Judge Mannion adopted the Report and Recommendation and, with the exception of Plaintiff's Fourth Amendment § 1983 unreasonable search and seizure claim against Defendant Miller in his individual capacity, Plaintiff's amended complaint was dismissed. (Doc. 10).

On April 24, 2023, summons was returned executed on Defendant. (Doc. 13). On June 5, 2023, the parties consented to proceed before a United States Magistrate Judge. (Doc. 18).

On June 5, 2023, Defendant filed a Motion to Dismiss or in the Alternative for Summary Judgment. (Doc. 19). On June 12, 2023, Defendant filed a Brief in Support. (Doc. 20). On June 22, 2023, Plaintiff filed a Brief in Opposition. (Doc. 21). Attached to Plaintiff's Brief in Opposition was an Affidavit swearing that all statements and information contained in his Brief were true and correct. (Doc. 21-1). On July 5, 2023, Defendant filed a Statement of Facts. (Doc. 23). On July 26, 2023, Plaintiff filed an Answer to Statement of Facts. (Doc. 24). Defendant did not file a reply brief. This matter is now ready to be resolved.

### B.   ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiff begins his Amended Complaint writing that he is "stating a claim that under the Fourth Amendment of the United States Bill of Rights, that my rights were violated by Detective R. Miller of the Kingston Police Department along with other

members of the Kingston and Wilkes-Barre Police Departments." (Doc. 7, p. 2). Plaintiff alleges "$11,000.00 of my US currency and home surveillance system was confiscated." *Id*. Plaintiff then lists the laws he believes were violated by Defendants, beginning with the violation of his rights under the Fourth Amendment. *Id*. After quoting the Fourth Amendment Plaintiff appears to try and provide facts that support his assertion that his Fourth Amendment rights were violated. *Id*.

Plaintiff alleges that on February 18, 2021, Defendant Miller along with other officers of the Kingston and Wilkes-Barre Police Departments entered his home under the pretense of looking for another individual. (Doc. 7, p. 2). Plaintiff asked for a search warrant but one was never provided and Plaintiff never provided consent for the search. *Id*.

Plaintiff alleges that Defendant Miller did not carry out his duty to uphold the law because he searched Plaintiff's home and seized Plaintiff's property without a warrant. (Doc. 7, p. 3). Plaintiff states that when he asked Defendant Miller why his money was being seized Defendant Miller replied, "because I can." *Id*. Plaintiff alleges that Defendant Miller "went beyond the bonds [sic] of his lawful authority" in searching Plaintiff's house and seizing his property without a warrant, including his home surveillance system which could identify all the officers involved. *Id*.

Plaintiff states no receipt of what was seized was left with him. (Doc. 7, p. 4). *Id*. Plaintiff alleges the Luzerne County District Attorney and Luzerne County Drug and Task Force Coordinator "swore to the account" that a large amount of illegal

narcotics and $7,270.00 were seized from Plaintiff's home, which Plaintiff states is false. (Doc. 7, p. 5). According to Plaintiff, Chief Joseph Coffay of the Wilkes-Barre Police Department told Plaintiff "nothing was found" as he left Plaintiff's house apparently on the day of the search. *Id*. Plaintiff alleges that Defendant Miller concluded Plaintiff had gotten his money through illegal means thus "depriving me of my right to my own property and money through hearsay and drawing his own conclusion where no investigation was conducted." *Id*. Plaintiff states he was not arrested or charged with any crime. (Doc. 7, p. 5-6).

Plaintiff states "Under 42 U.S. Code § 1983 – Civil action for deprivation of rights," followed by a holding from an unnamed case. (Doc. 7, p. 4). The holding states that a plaintiff in a § 1983 case does not need to allege the defendant acted in bad faith, and that a plaintiff is only required to allege two things to state a § 1983 claim: 1) deprivation of a federal right and 2) by someone acting under the color of state law. *Id*. Plaintiff then apparently summarizes his claim, saying, "I am stating a claim that Detective Miller along with the Kingston and Wilkes-Barre Police Departments have conspired against me and deprived me of my federal rights under the IV [sic] Amendment . . . ." (Doc. 7, p. 6).

Plaintiff states he has suffered "extreme stress and anxiety" (Doc. 7, p. 6), and "mental anguish, depression, anxiety, PTSD, and financial hardship," (Doc. 7, p. 7) because of Defendants' actions. Plaintiff seeks as relief the return of the "$11,000.00+" and his home surveillance system, (Doc. 7, p. 6), as well as

"15,000,000.00 [sic]" for the mental anguish and financial hardships he has faced as a result of this allegedly warrantless search and seizure (Doc. 7, p. 7).

## C.   THE FORFEITURE PETITION AND SETTLEMENT AGREEMENT

Although Plaintiff's original complaint has been supplanted by his amended complaint, in his original complaint (Doc. 1), Plaintiff stated that he received a notice from the Commonwealth approximately one year after the search and seizure informing him he must file an answer to a Petition for Forfeiture and Condemnation of $7,270.00 seized on February 18, 2021. (Doc. 1, p. 4). In his amended complaint Plaintiff does not directly reference this proceeding aside from stating "the Commonwealth said their claim of Forfeiture condemnation under Title 42 chapter 58, controlled Substance Forfeiture 5802" and "after this raid I did not hear from the Commonwealth for one year concerning this situation and still no Judge has been assigned to this case." (Doc. 7, p. 5-6). Additional documents submitted by the parties provide more clarity.

On February 8, 2022, the Luzerne County District Attorney's Office ("the Office") filed a Petition for Forfeiture and Condemnation in the Luzerne County Court of Common Pleas. (Doc. 20, p. 3; Doc. 20-1, pp. 2-3; Doc. 20-2, p. 2 ¶ 8). The Office sought an Order of Forfeiture for the $7,270.00 seized on February 18, 2021 and stated the owner of the property was Plaintiff. (Doc. 20-1, pp. 2-3). On February 18, 2022, the forfeiture petition was served on Plaintiff. (Doc. 20-2, p. 2 ¶ 9). On February 24, 2022, Plaintiff filed a "Declaration of Rights Motion to Intervene with

an Injunction." *Id*. at ¶ 12. On March 10, 2022, the Office received a "Rule to Show Cause" purportedly filed by Plaintiff on March 8, 2022. *Id*. at ¶ 11. On July 25, 2022, Plaintiff filed a "Motion for Return of Property." *Id*. at ¶ 13. On September 28, 2022, Plaintiff sent a letter to Judge Vough alleging since his March 8, 2022 "answer,"[39] there had been no movement in the case, no judge had been assigned and no hearing had been scheduled. (Doc. 24-3, p. 2-3). On October 24, 2022, the Luzerne County Court of Common Pleas ordered oral argument on Plaintiff's "Motion for Return of Property." (Doc. 20-2, p. 2 ¶ 14). On December 7, 2022, oral argument was held. *Id*. at ¶ 15. During the oral argument, the parties agreed to settle. (Doc. 20-2, p. 3 ¶ 16; Doc. 21-4, p. 2, ¶ 16).

The parties do not appear to dispute that on January 9, 2023, Plaintiff, Samuel Sanguedolce, Daniel Zola, Larry Whitehead, and Charles Casey signed a Forfeiture Settlement Agreement ("the Agreement").[40] (Doc. 20, p. 4; Doc. 20-2, pp. 2-3; Doc. 21, p. 5; Doc. 21-4, p. 2; Doc. 24, p. 2). While Plaintiff disputes the validity of the agreement, arguing that it was signed under duress, he does not dispute that he signed it. (Doc. 24, p. 2). Plaintiff also does not dispute the authenticity of the Agreement

---

[39] The Agreement states that this "Rule to Show Cause" was not an answer in accordance with the "Pennsylvania Rules of Civil Procedure regulations." (Doc. 20-2, p. 2 ¶ 11).

[40] At the signing of the Agreement, Samuel Sanguedolce was the District Attorney of Luzerne County, Daniel Zola was the Deputy District Attorney of Luzerne County, Larry Whitehead was the Luzerne County Drug Task Force Coordinator, and Charles Casey was a Detective with the Luzerne County District Attorney's Office.

Defendant attaches to his Motion, and Plaintiff provides the second page of the same

Agreement as an attachment to his Brief in Opposition. (Doc. 21-4, p. 2).  Pursuant

to the agreement, $7,270.00 and a Samsung video surveillance system were returned

to Plaintiff. (Doc. 20, p. 4; Doc. 20-2, p. 3; Doc. 21, p. 5; Doc. 21-4, p. 2; Doc. 23,

¶ 6; Doc. 24, pp. 2-3). In the Agreement, the following provisions, among others,

were agreed to:

> 16. During the oral argument, the Luzerne County District Attorney and Sulaiman Ismail agreed to settle the matter.

> 17. The parties agree that the return of funds constitutes a full and complete settlement of the matter resolving all claims now alleged or which might exist in the future. (See also, paragraph 21 below)

> . . . .

> 19. The funds that are the subject of this settlement agreement were properly seized pursuant to a valid search warrant and held in escrow pending final resolution.

> . . . .

> 21. Additionally, during a hearing held on December 7, 2022, Sulaiman Ismail verbally requested return of a Samsung Video Surveillance System that was seized as evidence pursuant to the same warrant, the Commonwealth agreed.

(Doc. 20-2, p. 3; Doc. 21-4, p. 2).

## IV.   ANALYSIS

As discussed above, the only remaining claim in this case is Plaintiff's Fourth

Amendment § 1983 unreasonable search and seizure claim against Defendant Miller

in his individual capacity. (Doc. 10, p. 4). Defendant argues this claim against him

should be dismissed, or in the alternative that the Court should enter judgment in his

favor, because the Forfeiture Settlement Agreement bars Plaintiff's claim. (Doc. 20).

Defendant asserts that we can address the Agreement in deciding this Motion under

Rule 12b(6). (Doc. 20, p. 5-6). However, "[b]ecause the disposition of Defendant['s]

[ ] hybrid motion turns on consideration of materials beyond the scope of Plaintiff's

[ ] Amended Complaint, conversion of Defendant'[s] motion to dismiss into a

motion for partial summary judgment is appropriate.[41]

> Before the Court can exercise its discretion to convert a motion to dismiss into a motion for summary judgment, it must provide adequate notice to the Plaintiff of its intent to convert the motion, and afford Plaintiff a reasonable opportunity to present any material relevant to his claims. *Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir. 1989).

> Consistent with that requirement, "motions for summary judgment that are presented to the court as motions in the alternative constitute sufficient notice to a non-moving party that the court may convert a motion to dismiss into a motion for summary judgment," and therefore, additional notice is not required. *Carver v. Plyer*, 115 Fed.Appx. 532, 536 (3d Cir. 2004) (not precedential) (citing *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996)).[42]

Here, Defendant's Motion "was presented as one in the alternative" for summary

judgement.[43] Plaintiff responded to both Defendant's Brief in Support and Statement

---

[41] *Delaney v. FTS Int'l Servs., LLC*, No. 4:16-CV-662, 2017 WL 264463, at * 4 (M.D. Pa. Jan. 20, 2017) (citing Fed. R. Civ. P. 12(d) ("If on a motion ... under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.")).

[42] *Id*.

[43] *Id*.

of Material Facts. (Docs. 21, 24). The Court finds "Plaintiff has had sufficient notice of the Court's potential conversion of the motion into one for summary judgment, and therefore, the Court considers the motion under the Rule 56 standard."[44]

In support of his Motion, Defendant attached the full Agreement Plaintiff entered into after the filing of the amended complaint. (Doc. 20-1, pp. 2-3). Plaintiff attached to his Brief in Opposition the second page of the Agreement.

## A.   PLAINTIFF'S REQUEST THAT THE COURT "EXCLUDE" THE AGREEMENT

In his argument that the Agreement bars Plaintiff's claim, Defendant cites to the Agreement, wherein Plaintiff agreed that "the parties agree that the return of funds constitutes a full and complete settlement of the matter resolving all claims now alleged or which might exist in the future" and "the funds that were subject to the Settlement Agreement 'were seized pursuant to a valid search warrant.' ([Doc. 20-2], ¶ 19)." (Doc. 20, pp. 6-7).

Plaintiff does not dispute that he signed the Agreement. Instead, Plaintiff argues that he signed the agreement under "duress," that he did not have his reading glasses and could barely make out the agreement, and that the Agreement violates his rights. (Doc. 24, pp. 2-4). Because of this, Plaintiff apparently believes the Agreement is unenforceable and asks the Court "to exclude the Forfeiture Settlement

---

[44] *Id.*

Agreement obtained under duress . . . ." (Doc. 24, p. 5). Plaintiff's arguments are unpersuasive.

"A settlement agreement is a contract, and a dispute over the settlement agreement is governed by state contract law."[45] Under Pennsylvania law, "once formed, a settlement will not be set aside except upon 'a clear showing of fraud, duress, or mutual mistake.'"[46]

Plaintiff's assertion that he did not have his reading glasses and so "could barely make out the wording" and "glanced over the contents the best I could under the situation" is unavailing. (Doc. 24, p. 3). "[A]s the Pennsylvania Supreme Court has stated, in the absence of proof of fraud, failure to read is an unavailing excuse or defense and cannot justify avoidance, modification, or nullification of the contract or any provision thereof."[47] Plaintiff does not make any allegations regarding fraud.

---

[45] *Brass Smith, LLC v. RPI Indus., Inc.*, 827 F. Supp. 2d 377, 380 (D.N.J. 2011).

[46] *Santander Bank, N.A. v. Express Sign Outlet Inc.*, 237 A.3d 448 (Table), at *3 (Pa. Super. Ct. 2020) (quoting *Felix v. Giuseppe Kitchens & Baths, Inc.*, 848 A.2d 943, 947 (Pa. Super. Ct. 2004)). *See also Nayak v. McNees Wallace & Nurick LLC*, 700 F. App'x 172, 176 (3d Cir. 2017) ("A signed release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake." (quoting *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 892 (3d Cir. 1975) (internal quotation marks omitted))).

[47] *Eifert v. Meridian Sec. Ins. Co.*, No. 3:20-CV-439, 2023 WL 3986321, at *6 (M.D. Pa. May 17, 2023), *report and recommendation adopted*, No. 3:20-CV-439, 2023 WL 3984165 (M.D. Pa. June 13, 2023) (quoting *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983) (quoting *In re Olson's Estate*, 291 A.2d 95, 98 (Pa. 1972) (collecting cases) (internal quotations and citations omitted))); *see also Tran v. Metropolitan Life Ins. Co.*, 408 F.3d 130, 136-37 (3d Cir. 2005).

Therefore, as a matter of law, his assertion he could not and so did not read the contract is not a reason for the Court to "exclude" the Agreement.

Plaintiff states, "[t]he Forfeiture Settlement Agreement is a violation of [his] rights under Title 18 U.S. Code 241 Conspiracy against Rights and Color of Law." (Doc. 24, p. 3). As a matter of law, this simply is not true. The United States Criminal Code, Title 18, does not endow Plaintiff with any rights. Thus, this assertion is not a reason for the Court to "exclude" the Agreement.

"Although this case is before the court under federal question jurisdiction, the claim[ ] of duress . . . [is] grounded in state law."[48] Under Pennsylvania law, "once formed, a settlement will not be set aside except upon 'a clear showing of fraud , duress, or mutual mistake.'"[49]

Plaintiff alleges:

This agreement was signed under "Duress" The agreement was about much more than just receiving back my property. I expected to sign a simple receipt for receiving the return of my property, not an exaggerated dissertation of this whole process, and ask me to give up my rights and swear that the defendant was not to be held liable for his actions.

When I went to pick up my check, based on the atmosphere of the small interrogation room the two detectives brought me into as they met me in the hall, it was very intimidating and stressful."

When we got to the room, I was told to have a seat. My check was on the table then Detective Casey showed me this paper that he said I had

---

[48] *Reed v. SmithKline Beckman Corp.*, 569 F. Supp. 672, 674 (E.D. Pa. 1983).
[49] *Santander Bank, N.A.*, 237 A.3d 448 at *3 (quoting *Felix*, 848 A.2d at 947. *See also Nayak*, 700 F. App'x at 176.

to sign. This document had twenty-six points to cover. I asked Detective
Casey, "Is this an investigation?" He said, "No, I just want to know how
you were getting this money back because we will… continue to take
money." I had no words for his statement, but it let me know some of
these officers are driven by these asset forfeitures. I did not have my
reading glasses and could barely make out the wording I was very
uncomfortable. I glanced over the contents the best I could under the
situation. If I had not signed that Forfeiture Settlement Agreement, I
would not have gotten my money back that day or maybe ever, which
I desperately needed. I was under duress. See (C. Law no. 1, 2, 3, 5).

(Doc. 14, pp. 2-3).

Pennsylvania has defined duress "as that degree of restraint or danger, either

actually inflicted or threatened and impending, which is sufficient in severity or

apprehension to overcome the mind of a person of ordinary firmness."[50] Even

assuming these facts are true and happened as Plaintiff explains them, they fail as a

matter of law to constitute grounds for setting aside the Agreement. "[U]nder

Pennsylvania law, '[d]uress is not established merely by showing that the release

was given under pressure.' Rather, 'where the contracting party is free to come and

go and to consult with counsel, there can be no duress in the absence of threats of

actual bodily harm.'"[51] According to Plaintiff's September 28, 2022, letter to Judge

Vough, counsel was, at least at some point, representing Plaintiff in the Forfeiture

---

[50] *Blackhawk Neff, Inc. v. Kusevich Contracting, Inc.*, No. 1721 WDA 2014,
2016 WL 783248, at *6 (Pa. Super. Ct. Feb. 29, 2016) (quoting *Adams v. Adams*, 848
A.2d 991, 993 (Pa. Super. Ct. 2004)) (internal quotation marks omitted).
[51] *Thomas v. Sandstrom*, 459 F. App'x 93, 95 (3d Cir. 2012) (quoting *Three
Rivers Motors Co.*, 522 F.2d at 893).

Petition matter.[52] (Doc. 24-3, pp. 2-3). It is unclear if and when that representation ceased. Plaintiff does not state that he was not allowed to consult with counsel, bring counsel with him, leave with a copy of the agreement to go consult with counsel, or was otherwise barred from consulting counsel. Nor does Plaintiff state that he was threatened with actual bodily harm. Further, "[d]uress is not established merely by showing that the release was given under pressure of the financial circumstances . . . ."[53] "[T]he law is clear that the existence of financial pressure to sign a waiver is insufficient to establish that it was executed involuntarily."[54]

That the environment was intimidating and stressful, emotionally or financially, is "legally insufficient" to establish the Agreement was signed under duress.[55] Plaintiff's own description of the signing of the Agreement shows "[t]here was no restraint or danger, either actually inflicted or threatened, that was sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness."[56] The environment Plaintiff found himself in while reviewing the Agreement "may have made [him] uncomfortable and even pressured [him] into

---

[52] Plaintiff wrote "Currently I am waiting for a Request for Discover to be sent to my counsel from District Attorney's Office of Luzerne County. My counsel mailed the District Attorney's office . . . . My counsel spoke with Melissa McCaffery in the District Attorney's office . . . ." (Doc. 24-3, pp. 2-3).

[53] *Three Rivers Motors Co.*, 522 F.2d at 894.

[54] *Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 295 (3d Cir. 2003).

[55] *Nyak*, 700 F.App'x at 176.

[56] *Blackhawk Neff, Inc.*, 2016 WL 783248, at *7.

taking a course of action that deserved more reflection. But Pennsylvania law is clear that this would not constitute duress."[57]

Based on Plaintiff's arguments there is no reason for the Court to "exclude" the Agreement as Plaintiff requests. We therefore turn to Defendant's arguments.

### B.   WHETHER PLAINTIFF'S CLAIM IS BARRED BY THE AGREEMENT

Defendant argues that "the clear, unambiguous language in the parties' January 9, 2023 Forfeiture Settlement Agreement waives Plaintiff's right to assert claims against members of the Luzerne County District Attorney's Office and Luzerne County Drug Task Force for all events and operative facts related to the February 18, 2021 search." (Doc. 20, p. 6). Defendant asserts "[t]he waiver language in the Forfeiture Settlement Agreement here is unambiguous and is 'prominent and clearly identifies the rights being waived.'" (Doc. 20, p. 7).[58] Defendant argues "the Forfeiture Settlement Agreement contains an unambiguous, broad, general release that the agreement constitutes 'complete settlement of the matter resolving all claims now alleged or which might exist in the future.' (Ex. B, ¶ 17)." (Doc. 20, p. 8). Thus, according to Defendant, because this lawsuit was filed before Plaintiff signed that release, the Agreement must encompass the claim in the amended complaint. (Doc. 20, p. 8).

---

[57] *Gregory v. Derry Tp. Sch. Dist.*, 418 F.App'x 148, 151 (3d Cir. 2011).
[58] Quoting *Easton v. Bristol-Myers Squibb Co.*, 289 F.Supp.2d 604, 610 (E.D. Pa. 2003).

In response, Plaintiff argues that he "did not agree to give up [his] right to be compensated for the violations and deprivation [he] experienced," and that instead he "agreed not to pursue the additional funds taken but not recorded," (Doc. 24, p. 2), and that it "resolved a full and complete matter that I would not file a complaint against every officer at the search regarding the total amount seized that was not recorded," (Doc. 24, p. 3).

Under Pennsylvania law, "contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts."[59] Here, we cannot agree with Defendant that "the clear, unambiguous language in the parties' January 9, 2023 Forfeiture Settlement Agreement waives Plaintiff's right to assert claims against members of the Luzerne County District Attorney's Office and Luzerne County Drug Task Force for all events and operative facts related to the February 18, 2021 search." (Doc. 20, p. 6). The Agreement states:

> The parties agree that the return of funds constitutes a full and complete settlement of the matter resolving all claims now alleged or which might exist in the future.

(Doc. 20-2, p. 3; Doc. 12-4, p. 2). The parties appear to disagree as to what "the matter" refers to. Plaintiff believes "the matter" refers to the Petition for Forfeiture, with him agreeing to not pursue the additional money he asserts was seized. (Doc.

---

[59] *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). *See also Dimedio v. Univ. of Sciences in Phila.*, No. 2511 EDA 2012, 2013 WL 11251568, at * 4 (Pa. Super. Ct. Oct. 2, 2013); *Allstate Fire & Cas. Ins. Co. v. Hymes*, 29 A.3d 1169, 1172 (Pa. Super. Ct. 2011).

24, p. 2). Defendant believes "the matter" refers to any claims relating the February 18, 2021 search. (Doc. 20, p. 6). Both parties offer reasonable interpretations of what "the matter" was meant to refer to, showing the language "is reasonably susceptible of different constructions and capable of being understood in more than one sense."[60] This ambiguity leaves a question for the finder of fact to resolve.[61] Therefore, summary judgment cannot be granted on this basis.

Defendant also argues in his Brief in Support that "Plaintiff also agreed that the funds that were subject to the Settlement Agreement 'were seized pursuant to a valid search warrant.' ([Doc. 20-2], ¶ 19)." (Doc. 20, p. 7). Plaintiff brings a Fourth Amendment § 1983 unreasonable search and seizure claim. In his amended complaint Plaintiff alleged that Defendant did not have a search warrant and so conducted an illegal search and stole Plaintiff's money. (Doc. 7, p. 3). Plaintiff cannot maintain his Fourth Amendment § 1983 unreasonable search and seizure claim as alleged where he has agreed there was a valid search warrant for the search he complains of and that his property was properly seized pursuant to it. (Doc. 20-2, p. 3 ¶¶ 19, 21; Doc. 21-4, p. 2 ¶¶19, 21). Defendant has thus submitted "affirmative evidence that negates an essential element of [Plaintiff's] claim."[62]

---

[60] *Hutchison v. Sunbeam Coal Co.*, 519 A.2d 385, 390 (Pa. 1986).
[61] *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004).
[62] *Celotex*, 477 U.S. at 331.

Plaintiff points to nothing in the record to rebut the showing made by Defendant: that Plaintiff, by signing the Agreement, agreed that the funds and surveillance system were properly seized pursuant to a valid search warrant. Plaintiff's only real responsive argument is that the Court should "exclude" the Agreement. (Doc. 24, pp. 2-3). As discussed above, Plaintiff's arguments for the exclusion of the Agreement fail.

Plaintiff states he disagrees with the provision of the Agreement and statement in Defendant's Statement of Material Facts that "Plaintiff also agreed that the funds that were seized from him 'were properly seized pursuant to a valid search warrant and held in escrow pending final resolution.' (*Id*., ¶19)." (Doc. 24, p. 4). Plaintiff argues that his property was not properly seized because he was not named on the search warrant. However, that is not the issue here. The issue here is whether there is a question of material fact that Plaintiff agreed, by signing the Agreement, that there was a valid search warrant that his property was properly seized pursuant to that warrant. Plaintiff does not dispute that he signed the Agreement. Thus, there is no dispute of material fact that Plaintiff signed the Agreement and agreed there was a valid search warrant that his property was properly seized pursuant to. Plaintiff's claim is therefore barred by the Agreement and summary judgment will be entered for Defendant.

Plaintiff seems to assert that the search and seizure were unreasonable not because of the lack of a valid warrant, but because he was never given a copy of the

warrant during the search. Plaintiff asserts "[t]he IV Amendment states that 'upon entering the premises to be searched, a warrant must be presented to the property owner.'" (Doc. 21, p. 3). Plaintiff is incorrect.[63] The Fourth Amendment does not say this, and it is well established that the Fourth Amendment does not require that the executing officer give the owner a copy of the warrant before searching.[64] Therefore Plaintiff has no § 1983 claim that he was not given a warrant before or during the search as no constitutional right was violated.[65] Plaintiff complains that Defendant did not follow "proper procedure" or "proper police procedure," but, even if true, Plaintiff cannot bring a § 1983 claim for the violation of police procedure or Pennsylvania's Rules of Criminal Procedure as these do not confer federal rights.[66] (Doc. 21, p. 3; Doc. 24, p. 4).


[The next page contains the Conclusion]

---

[63] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

[64] *United States v. Grubbs*, 547 U.S. 90, 98-99 (2006).

[65] *Hart v. Gordon*, 591 F. App'x 125, 128 (3d Cir. 2014).

[66] *Woloszyn*, 396 F.3d at 319.

## V.    CONCLUSION

For the reasons discussed above, Plaintiff's claim is barred by the Agreement.

Accordingly, it will be ordered that:

(1)    Defendant's Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 19) will be GRANTED.

(2)    The Clerk of Court will be instructed to CLOSE this case.

Date:  April 11, 2024                        BY THE COURT

                                             *s/William I. Arbuckle*
                                             William I. Arbuckle
                                             U.S. Magistrate Judge